## THE RAYMOND.

(District Court, E. D. New York. July 19, 1910.)

Towage (§ 15*)—Injury to Tow—Improper Mooring.

An injury to a barge towed by a tug to the end of a pier over mud flats in Jamaica Bay, where she was left in such position that when the tide ebbed she rested on the bottom diagonally across the dredged channel and was strained, *held* due to the fault of both vessels, the tug as in charge of the maneuver being in fault for not seeing to it that the barge was not left in such position, and the barge because her master refused to obey the directions of the tug master as to mooring his vessel.

[Ed. Note.—For other cases, see Towage, Dec. Dig. § 15.*]

In Admiralty. Suit by the Clinton Point Stone Company against the steam tug Raymond. Decree against the tug for half damages.

Foley & Martin, for libelant.
Alexander & Ash, for claimant.

CHATFIELD, District Judge. Upon June 15, 1908, the tug Raymond undertook to tow a scow loaded with stone to a dock, some 60 feet long and 15 feet in width, extending out over a mud bank, from a bulkhead back of which building operations were being conducted, at a point on the east side of Jamaica Bay. A narrow channel, running near what is known as Aunt Sally's drain, had been dredged to a width of about 50 feet along the face of the bulkhead. This dredged channel was some 800 or 900 feet long, and curves around at a distance of 50 or 60 feet from the bulkhead for a considerable distance beyond the dock in question. The barge was 108 feet long, 30 feet wide, and had a draft of 7 feet. Upon the day of the occurrence, it was low tide at about 2 p. m., and the towing operation was undertaken by the Raymond at such a time as to arrive off the face of the dock at about 9 a. m. The witnesses agree that the tide turned ebb almost at the time that the barge arrived off the face of the dock. The captain of the barge was not familiar with the locality, and had no knowledge of the handling of boats. The captain of the tug was experienced in the waters of Jamaica Bay and familiar with the locality, but not with the exact dimensions of the narrow curved channel around the front of this dock. At low tide the mudbanks on each side of the dredged channel are considerably out of water, while at high tide the channel could only be definitely located by soundings. It would appear that there had been some argument between the captain of the tug and the captain of the barge over occurrences upon the voyage to the wharf, and it is apparent from the testimony that neither of the captains yielded to the judgment of the other. But the responsibility for the towing and the giving of directions as to what should be done with the barge rested upon the captain of the Raymond. No serious mishap occurred until the boat had arrived off the front of this dock or wharf, which as has been said presented a square end 15 feet in width, with light piles at each corner, and being at high tide about

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6 or 8 feet above the water. To that point the tide had apparently helped the towing operation, and the barge was drawn by the tug in the middle of the dredged channel, until it extended about 45 feet beyond the dock and back an equal distance, while the tug, on a very short hawser, was lying ahead of the barge, with her nose substantially against the outside curve of the dredged channel. It would have been possible for the tug in this position to have drawn the barge further up the channel and beyond the dock, but to do so it would have been necessary to turn the scow so that its side would not be parallel to the end of the dock, and there was no other way of getting the line from the barge for the temporary mooring than to make fast to the end of the dock. A permanent mooring could be made, as was subsequently done, by carrying a line over the intervening 60 feet of mud flat to the bulkhead, but the set of the tide and the narrowness of the channel did not give opportunity to get out such a line, either by wading or with a skiff, in time to hold the barge in the position in which the tugboat placed it. The tug captain's object and his directions to the captain of the barge were to throw a line to a man working on shore, who came down to the dock, and thus temporarily hold the scow against the inside edge of the channel and parallel to the face of the dock. The depth of the water immediately off the face of the dock necessitated keeping the barge some 10 feet away, and the tug captain apparently put the barge in the exact position where she should have been at the time. The captain of the barge did not think that the dock would hold the boat, and did not think that the tug had put the barge in the position where she could be moored. He did not follow the directions of the tug captain, and while none of the witnesses give a detailed account of the argument between the two captains, it is apparent that they disagreed or discussed the situation just long enough for the tide to turn or to run out sufficiently to swing the bow of the barge away from the dock toward the outside of the channel, and to swing the tug across the channel, where both were helpless. Later, the lowering tide left the barge diagonally across the channel, its starboard forward corner and its after port corner resting upon the mud, thus causing a bad sagging and warping of the timbers, necessitating a considerable expense for repairs. The damage resulting and the situation which caused the damage do not need discussion, as they are not in dispute, and are apparent from a mere statement of the position of the boat.

A consideration of the surroundings indicates that the captain of the tug could not have brought the barge much closer to the face of the dock nor into any different position than as he did. He could not have changed the position of the barge after the short delay in which his tug and the barge lost their direction in the course of the channel. The captain of the barge could do nothing to hold his boat, so long as he did not follow the directions of the tug captain and get out a line to the dock, even if that line were insufficient for a permanent mooring. The captain of the barge seems to have been at fault both in failing to obey the directions of the man who was familiar with the situation and in charge of the towing operations, and also in

not doing what was evidently the best and necessary thing under the circumstances, even if he did not consider that it would be of permanent use. On the other hand, the captain of the tugboat knew the location to which he was taking the boat. He knew what would have to be done upon arrival, and he neither instructed the captain of the barge nor attempted to see that the situation was made plain to him, nor did he have any one in readiness to take care of the tow if assistance should be necessary. The accident was an unusual one, in that a boat would not be likely to go aground in such a fashion and be severely injured under ordinary circumstances. But the captain of the tugboat should have realized (as is apparent) that if the barge rested upon both sides of the narrow channel, the fall of the tide would cause a severe strain, and he should have prevented the barge from being put in such a position, either by seeing that the barge captain was ready to avoid danger, or by keeping his tugboat and the tugboat's crew in readiness to prevent the boat from swinging, if the line were not carried to the dock promptly. The fault would seem to be primarily that of the barge captain, but the captain of the tugboat was also negligent in the way in which he failed to provide against accident in carrying out the maneuver, and it would seem that both the tug and the barge should be held responsible for the loss.

The damages will therefore be divided.